THE STATE *to use of* SALOMON, *Appellant*, v.
MASON *et al.*

### Division Two, November 29, 1892.

1. **Fraudulent Conveyance:** QUESTION FOR JURY.    Where a sale of personalty is assailed by creditors of the vendor on the ground of having been made in fraud of creditors and the consideration claimed for the sale is the surrender of certain notes held by the vendee against the vendor, the question of the validity of the notes is for the jury.

2. **Evidence:** ADMINISTRATOR'S SETTLEMENT.    A recital in an administrator's settlement of a certain sum received from the person therein named, when introduced in evidence to show payment of a note in question, may be explained.

3. **Fraudulent Conveyance:** VENDEE'S KNOWLEDGE.    A sale, though made by a vendor with a fraudulent intent, will not be declared void unless the vendee had actual notice and knowledge of such intent.

4. ———: ———.    The knowledge of facts which, if investigated and followed, would lead to knowledge of the fraud, is insufficient.

5. ———: PREFERENCE.    Where a preference is given by an insolvent debtor to a particular creditor, who receives property in satisfaction of *bona fide* debts, actual participation in the fraud is necessary to make the creditor's acceptance of the property fraudulent.

6. ———: ———: QUESTION FOR JURY.    The fact that the value of the property sold may have been largely in excess of the debt due the vendee would not of itself make the sale fraudulent, but it would be a fact from which the jury might infer that a preference was made in fraud of creditors, and the jury should be so instructed.

7. ———: QUESTION FOR JURY.    Where an inference of fraud may be drawn from all the facts and circumstances of a transaction the question of fraud should be submitted to the jury.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

REVERSED AND REMANDED.

*D. P. Dyer* and *David Goldsmith* for appellant.

(1) The court erred in refusing to instruct the jury that, if they believe that the alleged payment of $3,500 was not made by Trepp, they were bound to find that Trepp was indebted upon his three notes read in evidence, and to the full amount thereof. Bump on Fraudulent Conveyances [3 Ed.] pp. 574, 594; *Gates v. Labeaume,* 19 Mo. 26; *McConnell v. Bank,* 27 N. E. Rep. 617. (2) There was no evidence that the value of the property in controversy exceeded Trepp's indebtedness on said three notes, if said alleged payment was not in reality made by him, and the court, therefore, erred in refusing to instruct the jury to that effect. *Hill v. Corcoran,* 15 Col. 270. (3) The court erred in giving the instruction number 12. This is true: *First.* Because fraud in a sale can never be established by proof that the purchaser had reason to know or believe that the seller intended to defraud his creditors. *Van Raalte v. Harrington,* 101 Mo. 602; *Carroll v. Hayward,* 124 Mass. 120. *Second.* Because, in the case of a preference, actual knowledge by the preferred creditor of a fraudulent intent on the part of the debtor will not invalidate the preference. *Holmes v. Braidwood,* 82 Mo. 610; *Albert v. Besel,* 88 Mo. 150. *Third.* Because gross inadequacy in price is merely a badge of fraud; at the utmost, it only warrants an inference of fraud as a matter of fact, and does not as a matter of law establish fraud. *Schatz v. Kirker,* 17 Week. Notes of Cases (Pa.) 43; *Motley v. Sawyer,* 38 Me. 68; *Craver v. Miller,* 65 Pa. St. 456; *McFadden v.*

*Mitchell*, 54 Cal. 628; *Bickler v. Kendall*, 66 Iowa, 703; *Kempner v. Churchill*, 8 Wall. 362, 369; *Ames v. Gilmore*, 59 Mo. 537; Bump on Fraudulent Conveyances [3 Ed.] pp. 44, 45. *Fourth.* Because, even when such inadequacy is sufficient to warrant an inference of fraud as a matter of fact, it is a comment upon the evidence, and erroneous for the court to instruct the jury that they may infer it, and, therefore, it is all the more erroneous to require them to find fraud. Bump on Fraudulent Conveyances [3 Ed.] p. 34; *Herkelrath v. Stookey*, 63 Ill. 486; *Leasure v. Colburn*, 57 Ind. 374; *Kane v. Drake*, 27 Ind. 29. *Fifth.* And, finally, because there was no evidence of such an inadequacy as would warrant an inference of fraud, or constitute a badge of fraud. *Fuller v. Brewster*, 53 Md. 361; Bump on Fraudulent Conveyance, 45; *Prosser v. Henderson*, 11 Ala. 484; *Hunt v. Hoover*, 34 Iowa, 81; *Day v. Cole*, 44 Iowa, 452. (4) The trial court erred in excluding the parts of Mr. McIntyre's deposition which it ruled out. *Bank v. Kennedy*, 17 Wall. (84 U. S.) 25; Greenleaf on Evidence [14 Ed.] secs. 100, 101; Best's Principles of Evidence [Chambers Am. Ed.] p. 466, note; *State v. Gabriel*, 88 Mo. 631; *State v. Walker*, 78 Mo. 387; Wharton on Evidence [3 Ed.] secs. 1102, 262; Phillips on Evidence, pp. 169, 170. (5) When the debt preferred is *bona fide*, and the property transferred in payment is not excessive, there is no room to impute fraud in fact in a preference, unless a secret use in favor of the debtor is established by the evidence. *Knowles v. Street*, 87 Ala. 360; *Richardson v. Lewis*, 14 S. W. Rep. 1076; *Covanhovan v. Hart*, 21 Pa. St. 501; *Keiler v. Tutt*, 31 Mo. 307; *Bank v. Filch*, 48 Barb. 354; Bump on Fraudulent Conveyances [3 Ed.] 189; *State to use v. Mason*, 24 Mo. App. 326; *Nichols v. Bancroft*, 41 N. W. Rep. 891; *Carter v. Coleman*, 84 Ala. 258; *Edwards v. Dickson*, 2

The State to use v. Mason.

'S. W. Rep. 719. And there is no evidence in this case of any such secret use. *State to use v. Glaser*, 24 Mo. App. 324.

*C. H. Krum, John C. Orrick* and *Frank, Dawson & Garvin* for respondent.

(1) The court did not err in refusing to instruct that, if the jury believed that the alleged payment of $3,500 was not made by Trepp, they were bound to find that Trepp was indebted on his three notes read in evidence, and to the full amount thereof. The vice of the instruction is that it directs the jury to find as a conclusive presumption what the law declares to be only a disputable presumption. (2) The court did not err in instructing the jury that, if appellant "knew or had reason to know" of the fraud of the vendor, the sale was fraudulent as to the other creditors of the vendor. This is not in conflict with the rule laid down in *Van Raalte v. Harrington*, 101 Mo. 602. (3) The McIntyre deposition was properly excluded. (4) The case was properly submitted to the jury on the question of fraud; the evidence supports the verdict, and the latter should not be disturbed.

MACFARLANE, J.—This is an action upon the bond of defendant Mason as sheriff of the city of St. Louis, to recover damages for taking, under writs of attachment issued in April, 1888, against one Isaac Trepp, and selling certain goods claimed by plaintiff.

The answer admits the seizure and conversion of the goods, but charges that they were in fact the property of the debtor, Isaac Trepp, and were transferred to plaintiff fraudulently, and with intent to hinder, delay and defraud his creditors.

Isaac Trepp, a merchant doing business in Centra-

lia, Illinois, being in failing circumstances, on the eighteenth day of April, 1883, sold plaintiff and others his entire stock of goods, which were at once moved to St. Louis, where those received by plaintiff were attached by the creditors of Trepp.

The evidence shows that plaintiff Salomon and Trepp were brothers-in-law, having married sisters, who were the, daughters of one Martin Frank, of New York; that plaintiff was the executor of said Frank, and as such, at the date of the sale of the goods, held three notes against Trepp for $3,500, $3,000 and $2,000 respectively. Plaintiff claims that the goods in controversy were bought and paid for in settlement of these notes. The good faith of this sale constitutes the matter of controversy in this suit.

I. The court was asked by plaintiff to instruct the jury, as a matter of law, that Trepp was indebted to plaintiff, at the date of the sale and transfer of the goods, in the full amount of the said three notes, unless the $3,500 note had been paid, and that the burden of proving payment was on defendant.

There was no direct evidence tending to impeach the validity of the three notes; but the evidence did tend to prove payment of the one for $3,500. The instruction was asked on the theory that the notes were *prima facie* valid, and proof of their invalidity should be made by defendant.

The issue in the case was whether the sale was fraudulent, and not whether the notes were valid. The question of the validity of the notes, therefore, was only incidentally involved in the issue. They only represented the consideration for the transfer of the goods, and, as between the maker and the payee, were *prima facie* valid.

The consideration of the sale was one of the necessary elements of its validity. The only consideration

shown or claimed by the parties to the transaction was the surrender and cancellation of these notes. If the notes evidenced valid subsisting debts, then they constituted a sufficient consideration, as between the parties, for the sale of the goods; but when the validity of the sale is challenged by third parties, on the ground of fraud, every part of the transaction, including the validity of the consideration, is subject to investigation. We do not think that notes or other evidences of indebtedness between the parties to alleged fraudulent transactions are, as a matter of law, to be declared valid. Such evidence is too easily manufactured to be allowed conclusively to uphold a transaction, the good faith of which is questioned. In determining such question the jury should be allowed to judge of the whole transaction from all the facts and circumstances in evidence. There was no error in refusing the instruction.

II. At the trial, for the purpose of proving that the $3,500 note had been paid prior to the sale, the defendant introduced in evidence the settlement of plaintiff as executor of Frank, one item thereof with which he had charged himself being "cash from Isaac Trepp, $3,500." Defendant also read a deposition of plaintiff taken in another suit involving the validity of the same sale. In this deposition the plaintiff was given an opportunity to explain the charge of $3,500 contained in the settlement.

In rebuttal plaintiff offered to read a deposition of one McIntyre, the lawyer who prepared the settlement for him. By this witness plaintiff offered to prove that, when the settlement was made, he had told witness that $3,000 of the $3,500 charge in the settlement was the $3,000 note which the wife of plaintiff, as heir of Martin Frank, deceased, received as a distributive share in the estate, and $500 he himself had

paid to the estate on the note. This evidence was excluded by the court.

The fact which the insertion of the item in the settlement tended to prove was in the nature of a declaration, on the part of plaintiff, that the $3,500 note had been paid. We think what plaintiff said at the time, in explanation of the act, was admissible as a part of the transaction. The act of inserting the item in the settlement should be viewed, and its effect judged, in the light of the verbal acts of plaintiff while doing or directing it. They were admissible as indicating the intention at the time, "and are, therefore, admitted in proof like any other material facts." 1 Greenleaf on Evidence [15 Ed.] sec. 108; *State v. Gabriel*, 88 Mo. 638, and authorities cited.

III. The court instructed the jury, on request of defendant, in effect: That if the sale was made by Trepp with intent to hinder, delay or defraud his creditors, and plaintiff "knew or had *good reason to know* of such intent" at the time, and that the value of the goods transferred was "largely in excess" of the amount then actually due on said three notes, the sale was fraudulent and void.

A sale, though made by the vendor with a fraudulent intent, will not be declared void unless the vendee had actual notice and knowledge of such intent. The knowledge of facts, which, if investigated and followed out, would lead to knowledge of the fraud, is not deemed sufficient under the decisions of this court. It is "not the duty of every purchaser of goods to inquire into the motives of the vendor in making the sale; for such a rule would hamper the transfer of personal property to an extent which would be detrimental to commerce and subversive of the policy which encourages free and unlimited traffic in such property."

*Van Raalte v. Harrington,* 101 Mo. 610, and cases cited; *Carroll v. Hayward,* 124 Mass. 120.

The court goes further yet, in the proof required to establish fraud in a preference given by an insolvent debtor to one or more creditors, when goods are taken in satisfaction of *bona fide* debts. In such case the creditor has the right to look after his own interest, and is not required to consult the interest of the other creditors; an actual participation in the fraud is necessary to make his acceptance of the goods fraudulent. Simple knowledge is not enough. *Sexton v. Anderson,* 95 Mo. 379, and cases cited; *Holmes v. Braidwood,* 82 Mo. 610.

It is evident that the instruction is improper in predicating fraud in the sale upon the fraudulent intent on the part of the vendor, and only "good reason to know of such intent" by the vendee.

IV. Omitting from the instructions that part relating to the knowledge of plaintiff of the fraudulent intent of Trepp, does enough remain to make it a proper declaration of law? If the vendor intended fraud, and the value of the goods was largely in excess of the debts surrendered, would the sale be fraudulent, as to the other creditors, as a matter of law?

There is no doubt that inadequacy of price in the sale of property by an insolvent debtor is a badge of fraud; but it is not regarded sufficient alone to raise a legal inference of fraud, unless so grossly so as to "strike the understanding at once with the conviction that such a sale never could have been made in good faith." Bump on Fraudulent Conveyances, pp. 44, 45; *Ames v. Gilmore,* 59 Mo. 549; 8 American & English Encyclopedia of Law, 760.

The fact that the goods transferred may have been largely in excess of the amount due on the three notes

did not itself make this transaction fraudulent. It "might be grounds of inference" from which the jury may have drawn the conclusion that the preference was made in fraud of other creditors, and the instruction should have been so framed as to permit the jury to draw the inference. Bump on Fraudulent Conveyances, 34; 8 American & English Encyclopedia of Law, 770.

The value of the goods sold and the amount due on the notes were both disputed facts, which must have been known before the value and price could have been compared, and the adequacy or inadequacy determined. The words "largely in excess" used in the instructions are too indefinite to convince the understanding, as an inference of law, that the transfer was made in bad faith. We think the court erred in giving this instruction.

V. Plaintiff insists that, unless one or more of the notes had been paid, there was no evidence of fraud in the case, and the court should have so instructed the jury. Without undertaking to review the evidence, but after a careful consideration of it, we conclude that it was sufficient to authorize the submission of the issues to the jury. Fraudulent transactions are not committed openly, and in the light of day, but generally with secrecy, and with a view of concealing the evidence of it. Fraud must, therefore, generally be inferred from all the facts and circumstances which characterize the transaction. Where an inference of fraud may be drawn from all the circumstances the question should be submitted to the jury.

Other errors are assigned, but we find no other ruling which constitutes reversible error, or which demands special consideration.

For the errors indicated, the judgment will be reversed and the cause remanded. All concur.